1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    MONICA CANILAO, et al.,              Case No.  20-cv-08030-EMC

8                 Plaintiffs,
                                          **ORDER GRANTING DEFENDANT'S**
9          v.                             **MOTION FOR JUDGMENT ON THE**
                                          **PLEADINGS**
10   CITY COMMERCIAL INVESTMENTS,
     LLC,                                 Docket No. 51
11
                 Defendant.
12

13

14          Plaintiffs are six artists who painted murals on the exterior walls of the Stud Bar, San

15   Francisco's oldest continuously operating queer bar until it shut down in May 2020.  Plaintiffs

16   bring this action against Defendant City Commercial Investments, LLC ("CCI"), the owner of the

17   building in which Stud operated, to challenge CCI's alleged whitewashing and intentional

18   destruction of Plaintiffs' murals without notice in June 2020.  Plaintiffs raise claims under the

19   federal Visual Artists Rights Act, California Arts Preservation Act and for negligence.

20          Now pending is CCI's motion to dismiss Plaintiffs' claims for lack of subject matter

21   jurisdiction and for judgment on the pleadings.  Docket No. 51.  For the following reasons, the

22   Court **GRANTS** CCI's motion.

23                              **I.      BACKGROUND**

24   A.     Relevant Factual Allegations

25          In 2017, Plaintiffs Monica Canilao, Zarathustra Wesolowski, Ellery Bakaitis, Jeremy

26   Novy, Susan Greene, and Hailey Gaiser (collectively, "Plaintiffs") each painted large scale murals

27   on the exterior of San Francisco's oldest continuously operating queer bar, The Stud.  Docket No.

28   1 ("Compl.") ¶ 15.  Images of some of the murals follow:







*Id.* (images of works including "*Hands Lips, Face and Teeth,*" "*Queer Trans Spaces,*" "*Stud Stencil no. 1,*" "*Stepping Out,*" "*Eyes Wide Open,*" and "*Head First*").   The Stud was located in a building at 399 9th Street in San Francisco (the "Building"), owned by Defendant City Commercial Investments, LLC ("CCI"), and the bar was operated by Handsome Heidi, LLC, ("Handsome Heidi").  *Id.* ¶ 15; Docket No. 31 ("Am. Third Party Compl.") ¶ 6.  Plaintiffs allege

> [t]he process of creating the Murals became a community celebration as many generations of queers, elders and youth, from all walks of life, came out to visit and cheer the Artists on.  Over the following years the Murals being located at the off ramp of the I-80's 9th street exit was a highlight for all people to see and the Murals became a symbol of the LGBTQ community's fight to stay in San Francisco.  Passersby and bar patrons would pose and take pictures with friends, memorials were centered there and celebrations were held daily, all in front of the Murals that were proclaiming a message of queer safety and solidarity.  The community venerated the Murals and saw them as an important symbol of refuge.

*Id.* ¶ 16.  However, the Stud suffered debilitating losses as a result of the COVID-19 pandemic

and related "stay-at-home" orders issued, and, on or about May 31, 2020, the Stud closed its doors after 54 years in business.  *Id.* ¶ 17.  After announcing the bar's closing, the operators of the Stud, Handsome Heidi, allegedly requested information from Defendant CCI about its plans for the building, "specifically noting that if the building was to be demolished that community members were interested in the façade being saved, preserved and moved; or that pieces of the building could be distributed."  *Id.* ¶ 18.

The Stud "moved out on the eve of June, which is LGBTQ pride month, and most importantly to all San Franciscans, the 50-year anniversary of the city's historic Pride Week celebration, where millions of people and the world's eyes land on the SF LGBTQ community to continue to lead the way in a worldwide struggle for human rights."  *Id.* ¶ 19.  On June 20, 2020, Plaintiff allege that CCI began to paint the building white, and then beige.  *Id.* ¶ 20.  Plaintiffs allege that the "moment [CCI] began whitewashing and erasing the Artists' Murals, people on the street asked them to stop, but they refused."  *Id.*  As news about the "destruction" of the murals spread, Plaintiff there was an "outpouring of emotions and stories throughout the community" as reflected in coverage by a number of news media outlets, including "Kron 4 News, SFGATE, [and] the SF Chronicle."  *Id.* ¶ 21.  Plaintiffs allege that CCI completed its destruction of the murals by "mid-week of Pride 2020," and that CCI's decision, without warning or notice, to willfully destroy the murals during a historic event for San Francisco's LGBTQ community "demonstrated clear disdain for and degradation of [Plaintiffs]" and caused sadness, harm and outrage to Plaintiffs and the community.  *Id.* ¶¶ 22-23.

Plaintiffs allege Defendant's intentional destruction of their murals violates the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A, Compl. ¶¶ 24-29, the California Arts Preservation Act, Cal. Civ. Code § 987, Compl. ¶¶ 30-35, and constitutes negligence, *id.* ¶¶ 36-40. Plaintiff seek damages, including statutory damages and punitive damages, and an order permanently enjoining CCI from destroying their artworks.  Compl. § Prayer.

B.    Procedural Background

Plaintiffs filed this action on November 13, 2020 against Defendant City Commercial Investments, LLC ("CCI").  *See* Compl.  On March 16, 2021, CCI filed a third-party complaint

against Handsome Heidi, Docket No. 20, and on July 29, 2021, CCI filed an amended third-party complaint against Handsome Heidi, alleging that Handsome Heidi invited the Plaintiffs to the leased premises for the purpose of painting artwork onto the exterior of the building, asserting claims for breach of contract, contractual indemnity, waste, and negligence. *See* Am. Third Party Compl.

Now pending is CCI's motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See* Docket No. 51 ("Mot."). The Court heard argument on the motion on May 12, 2022, and provided the parties with the opportunity to submit supplemental briefing on the principles that should guide the Court's interpretation of the VARA by May 19. The parties timely filed supplemental briefs. *See* Docket Nos. 64, 65.

## II.  **STANDARD OF REVIEW**

A.    Lack of Subject Matter Jurisdiction/Standing (Rule 12(b)(1))

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Id.*  The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

2  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

3  favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

4  court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

5       "[I]n a factual attack, the challenger disputes the truth of the allegations that, by

6  themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at

7  1038.  In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court

8  "may review evidence beyond the complaint without converting the motion to dismiss into a

9  motion for summary judgment."  *Id.*  Moreover, the court "need not presume the truthfulness of

10  the plaintiff's allegations."  *Id.* at 1039.  "Once the moving party has converted the motion to

11  dismiss into a factual motion by presenting affidavits or other evidence properly brought before

12  the court, the party opposing the motion must furnish affidavits or other evidence necessary to

13  satisfy its burden of establishing subject matter jurisdiction."  *Id.* (citation omitted).

14       Either way, "it is within the trial court's power to allow or to require the plaintiff to supply,

15  by amendment to the complaint or by affidavits, further particularized allegations of fact deemed

16  supportive of plaintiff's standing."  *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation

17  (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the

18  court may consider "the complaint and any other particularized allegations of fact in affidavits or

19  in amendments to the complaint").

20  B.  Fed. R. Civ. P. 12(c): Judgment on the Pleadings

21       Pursuant to Fed. R. Civ. P. 12(c), "a party may move for judgment on the pleadings" after

22  the pleadings are closed "but early enough not to delay trial."  A Rule 12(c) motion is

23  "'functionally identical'" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and

24  therefore the same legal standard applies.  *Cafasso v. General Dynamics C4 Sys., Inc*., 637 F.3d

25  1047, 1055 n.4 (9th Cir. 2011).

26       Federal Rule of Civil Procedure 8(a)(2) requires a "pleading that states a claim for relief"

27  to include "a short and plain statement of the claim showing that the pleader is entitled to relief."

28  Fed. R. Civ. P. 8(a)(2).  A pleading that fails to meet this standard may be dismissed pursuant to

Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the pleading] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the [pleading] as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a [pleading] . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.     DISCUSSION

A.     VARA Claim

CCI advances three arguments that Plaintiffs have failed to plead all of the statutory elements for a claim under the Visual Artists Rights Act and, therefore, either lack standing to assert a claim or have failed to state a claim.

1.     VARA's Framework

The VARA was enacted in 1990 as an amendment to the Copyright Act.  17 U.S.C. § 106A.  "The purpose of VARA is to protect two 'moral rights' of artists—the rights of 'integrity' and 'attribution.'"  *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 984–85 (9th Cir. 2002) (citing H.R. Rep. No. 514, 101st Cong., 2nd Sess. 5 (1990)).  "The right of integrity allows the [artist] to prevent any deforming or mutilating changes to his work, even after the title in the work has been transferred."  *Id.* at 985 (citation omitted and internal quotation marks omitted) (alteration in original).  "The right of attribution allows the artist to be recognized by name as the

United States District Court
Northern District of California

6

creator of a work." *Id.*  In order to provide those protections, the VARA states that "the author of a work of visual art" shall "have the right," among other things, to "prevent any intentional distortion, mutilation, or other modification of [a] work which would be prejudicial to his or her honor" and "to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work. . . ." 17 U.S.C. § 106A(a).  "The rights cannot be transferred, but may be waived by a writing signed by the author."  *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 83 (2d Cir. 1995).  "Copyright registration is not required to bring an action for infringement of the rights granted under VARA, or to secure statutory damages and attorney's fees." *Id.*

Additionally, the statute contains specific provisions governing artwork incorporated into a building, as relevant here.  *See* 17 U.S.C. § 113(d).

> (d)(1) In a case in which—
>
> > (A) **a work of visual art has been incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction**, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), **and**
> >
> > (B) **the author consented to the installation of the work** in the building either before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, or **in a written instrument** executed on or after such effective date that is signed by the owner of the building and the author and **that specifies that installation of the work may subject the work to destruction**, distortion, mutilation, or other modification, **by reason of its removal**,
>
> **then the rights conferred by paragraphs (2) and (3) of section 106A(a) shall not apply**.
>
> (d)(2) **If the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction**, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), **the author's rights under paragraphs (2) and (3) of section 106A(a) shall apply unless**—
>
> > (A) **the owner has made a diligent, good faith attempt without success to notify the author** of the owner's intended action affecting the work of visual art, or
> >
> > (B) **the owner did provide such notice in writing and the person so notified failed, within 90 days after receiving such**

United States District Court
Northern District of California

7

**notice**, either to remove the work or to pay for its removal.

> For purposes of subparagraph (A), an owner shall be presumed to have made a diligent, good faith attempt to send notice if the owner sent such notice by registered mail to the author at the most recent address of the author that was recorded with the Register of Copyrights pursuant to paragraph (3). If the work is removed at the expense of the author, title to that copy of the work shall be deemed to be in the author.

*Id.* (emphasis added).

To summarize, if the artwork is incorporated "**in such a way that removing the work from the building will cause the destruction**, distortion, mutilation, or other modification of the work," then the artist's rights may be waived if the artist "consented to the installation of the work in the building. . . in a written instrument." *Id.* § 113(d)(1) (emphasis added).

Alternatively, **"[i]f the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction**, distortion, mutilation, or other modification of the work," then the artist's rights prevail unless one of two things has occurred. *Id.* § 113(d)(2) (emphasis added). First, the building's owner "has made a diligent, good faith attempt without success to notify the author of the owner's intended action affecting the work of visual art." *Id.* Or second, the owner has "provide[d] such notice in writing and the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal." *Id.*

Damages for violations of the VARA's rights of attribution and integrity are governed by general copyright law and include both actual and statutory damages. Statutory damages may range from $750 to $30,000 per work "as the court considers just." *Id.* § 504(c)(1). However, if "the [artist] sustains the burden of proving, and the court finds, that [a violation of the VARA] was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000 [per work]." *Id.* § 504(c)(2).

2.  <u>Consent of Building Owner</u>

CCI argues that Plaintiffs lack standing to bring a claim under the VARA because they have failed to allege that they were authorized by the building owner–CCI –to paint murals on the building, and, thus, painting of the murals in the first instance was illegal and is not protected by

8

1    the VARA.  Mot. at 12-13; *id.* at 13 ("Since Plaintiffs did not have permission from the owner of

2    the subject property, Plaintiffs do not have rights under the VARA.  Accordingly, this action

3    should be dismissed in its entirety as this Court does not have jurisdiction and Plaintiffs do not

4    have statutory standing.").  CCI concedes that the statutory provisions of the VARA "do[] not

5    expressly state that the consent of the building owner is necessary."  *Id.*  Instead, CCI argues that

6    "common sense" implies a requirement that a plaintiff must plead consent of a building owner to

7    establish standing and access the protections of the VARA.  *Id.*  The Court agrees with CCI, at

8    least with regards to works of art that *cannot* be removed from a building without causing their

9    destruction.

10        To ascertain whether building owner consent is required in order for VARA protections to

11   attach to non-removable works of art affixed to buildings, the inquiry begins with the statutory

12   language.  CCI cites 17 U.S.C. § 113(d)(1) which explains that if the artwork is incorporated "in

13   such a way that removing the work from the building will cause the destruction, distortion,

14   mutilation, or other modification of the work," then the artist's rights may be waived if the artist

15   "consented to the installation of the work in the building ... in a written instrument" which is

16   "signed by the owner of the building and the author" and "specifies that the installation of the

17   work may subject the work to destruction, distortion, mutilation, or other modification, by reason

18   of its removal."  *Id.*  CCI concedes that there was no signed instrument in which Plaintiffs waived

19   their VARA rights, as contemplated by the statute.  Mot. at 15.

20        Instead, CCI contends that this provision implies that to state a VARA claim, an artist must

21   allege they obtained the consent of a building owner to install the artwork in the first place.

22   Otherwise, a building owner would never have had the opportunity to ask the artist to waive their

23   rights in a signed instrument in the first instance and the provision would have no effect.  Mot. at

24   14.  This reading is required, CCI argues, because the signed writing requirement of § 113(d)(1) is

25   predicated on the assumption that an artist must be granted permission to install an artwork on a

26   defendant's building.  Without this predicate, the VARA would create an incentive for an artist to

27   secretly install unsanctioned, non-removable artwork without the permission of a building

28   owner—likely in violation of trespass and vandalism laws—in order to make it impossible for a

United States District Court
Northern District of California

building owner to negotiate a VARA waiver with the artist and to preclude the building own from removing the work (at least for the duration of the artist's life).  Mot. at 14.; *see also id.* ("If the artist who did not obtain consent did somehow still acquire rights under VARA, it would mean that an unpermitted artist would have greater than a permitted artist who played by the rules.").

The Court finds CCI's argument persuasive, at least with regards to works of arts which cannot be removed from a building.  It appears that just one district court has analyzed this question head on, and the court there adopted a view largely in line with CCI's argument.  *See English v. BFC&R E. 11th St. LLC*, No. 97 Civ. 7446(HB), 1997 WL 746444, *4-5 (S.D.N.Y. Dec. 3, 1997).  In *English*, the court considered the defendants' argument that the VARA did not apply to non-removable works of art which were installed on their building without their permission.  The court "f[ou]nd this argument convincing and h[e]ld that VARA is inapplicable to artwork that is illegally placed on the property of others, without their consent, when such artwork cannot be removed from the site in question."  *Id.* at *4.  The court explained:

> Defendants rely on common sense and on *Botello v. Shell Oil Co.,* 229 Cal.App.3d 1130 (Ct. App. 1991), in which the California appellate court noted in passing that that state's moral rights statute applied only to "art that is affixed or attached by arrangement with the owner.  It obviously does not apply to graffiti, which lacks these characteristics. . . ."  This is a compelling argument, for otherwise parties could effectively freeze development of vacant lots by placing artwork there without permission.  Such a construction of the statute would be constitutionally troubling, would defy rationality and cannot be what Congress intended in passing VARA.

*Id.*  The court then reviewed the evidence in the summary judgment record to conclude that there was no genuine dispute that the sculptures in questions were not removable and were installed on the defendants' property without permission.  *Id.*  Accordingly, "[b]ecause plaintiffs have failed to raise a genuine dispute of fact as to any license or permission to place the [nonremovable] artwork on the property, and in light of the court's holding that VARA is inapplicable to such illegally placed works, summary judgment is appropriate."  *Id.* at *5.  The court, however, noted that it "expresses no view on VARA's application to the individual sculptures, also illegally placed but *not* permanently affixed to the site[.]"  *Id.*

The Court finds compelling the reasoning and conclusion in *English* that 17 U.S.C. §

United States District Court
Northern District of California

113(d)(1) implies that an artist must have obtained permission from the building owner in order for VARA's protections to attach to their installation of a non-removable artwork on a building. Reading § 113(d)(1) *without* a permission requirement would allow an artist to gain domination over a building by affixing a nonremovable, permanent work of art without the consent or knowledge of the owner.  This could leave the building owner with a dilemma if it needed to maintain their building (such as to apply a protective coat of paint to preserve integrity of the wall, or perform rehabilitation affecting exterior walls necessary for safety or code compliance) or alter or deconstruct the building because of *e.g.* obsolescence.  Absent consent of the author who installed the art without prior knowledge or consent of the owner, the building owner could be barred from doing the necessary work, at least for the life of the artist.

*English* cites to a California Court of Appeals decision, *Botello*, which examined California's Art Preservation Act ("CAPA"), a moral rights statute which preceded the enactment of the VARA by 10 years.  *See* Cal. Civ. Code § 987(j) (operative date was January 1, 1980).  The relevant language of CAPA regarding the protection of non-removable artworks makes clear that a written instrument signed by the building owner is required to activate an artist's moral rights to such non-removable artworks.  *See* Cal. Civ. Code § 987(h)(1) (If a work of fine art cannot be removed from a building . . ., the rights and duties created under this section, *unless* expressly reserved by an instrument in writing signed by the owner of the building, . . . shall be deemed waived.).  The phrasing of California's statute expressly ensures that a building owner is not saddled with a binding obligation restricting their right to use, maintain or modify their own property by a party they may not even know, without their agreement or knowledge.  As the court in *Botello* remarked, the fact that the statute places "no duty at all" on the building owner "if the mural cannot be detached from the structure," "unless the artists' rights have been preserved in an executed and recorded instrument," avoids constitutional concerns that would inhere in a contrary rule that would allow artists to claim dominion to private property without the consent of the building owner. *Botello v. Shell Oil Co.*, 229 Cal. App. 3d 1130, 1138 (Ct. App. 1991).

While the statutory language of VARA does not, like CAPA, expressly premise the artist's rights on knowledge and consent of the building owner, can be read as an implicit assumption of

1    such.  Such an implication does not conflict with the language of VARA and makes practical and

2    constitutional sense.

3           No case holds to the contrary.  The best case for Plaintiffs is *Pollara v. Seymour*, in which

4    the district court considered Defendants' argument that the "VARA does not protect works that are

5    illegally placed on the property of others without their consent."  150 F. Supp. 2d 393, 396 n.4

6    (N.D.N.Y. 2001).  The court explained that "*English* is limited to the situation where the artwork

7    cannot be removed without destroying it" which differed from the case at issue where there was no

8    dispute that the work of art was removable.  *Id.*  Although the court distinguished the issue at bar

9    from the one in *English*, the court dropped a footnote to observe that "there is no basis in the

10   statute to find a general right to destroy works of art that are on property without the permission of

11   the owner."  *Id.*  While *Pollara* took issue with *English*, it did not actually engage with *English's*

12   reasoning.  In any event, *Pollara* only addressed removable art.

13          Plaintiffs argue that the court in *English* was concerned with the hypothetical scenario that

14   the VARA could be used misused strategically and nefariously by parties whose intent is not to

15   create and display art, but to block development by placing artwork on a building without

16   permission as a means of disruption.  But this concern, Plaintiffs contend, would be dealt with by

17   VARA's statutory text which states that the right to prevent "destruction of a work" applies only

18   to "a work of recognized stature."  17 U.S.C. § 106A(a)(3)(B).  Plaintiffs argue the scrawls of

19   "taggers, trespassers and property-rights scofflaws," Mot. at 15, would be unlikely to constitute a

20   "work of recognized stature" to trigger VARA protection as Defendant CCI and the *English* court

21   worried.  But what constitutes a "work of recognized structure" is ambiguous and may cut a wide

22   swath.  Courts have recognized street art may be considered "high art," and, thus, could rise to the

23   level of "recognized stature."  *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 167-68 (2d Cir. 2020);

24   *see also Cohen v. G&M Realty L.P.*, 988 F. Supp. 2d 212, 219 (E.D.N.Y. 2013) (trial court

25   decision in the same litigation confirming that the artists obtained permission from the building

26   owner to install aerosol works on the building).  The requisite of "work of recognized structure"

27   provides little protection and guidance to unknowing building owners.

28          In light of the foregoing, the Court concludes that § 113(d)(1) of VARA implies a

12

1  requirement that an artist obtain the consent of a building owner for VARA's protections to apply

2  to a nonremovable artwork installed on a building.  As discussed above, there is a strong logical

3  basis to read in this implied requirement into the statute, and such a requirement is not inconsistent

4  with the text of the statute.

5       Plaintiffs concede that the complaint does not allege that Plaintiffs obtained permission

6  from the *building owner*, Defendant CCI, prior to installing their nonremovable artworks.  Instead,

7  Plaintiffs argue that they have sufficiently alleged that they had permission from the owners of the

8  Stud Bar—Handsome Heidi—to install the murals and that CCI's third-party complaint against

9  Handsome Heidi supports the inference that Handsome Heidi consented to Plaintiffs' installation

10  of the murals.  *See* Compl. ¶¶ 15, 16 ("The process of creating the Murals became a community

11  celebration as many generations of queers, elders, and youth, from all walks of life came out to

12  visit and cheer the Artists on."), 18; Docket No. 31 ¶¶ 7, 16 (CCI's pleading that Handsome Heidi

13  invited Plaintiffs to the leased premises for the purposes of painting artworks on the building).

14  Plaintiffs filed a supplemental brief arguing that if a property owner's consent is a VARA

15  prerequisite—at least with regards to nonremovable artworks on buildings—"it is satisfied here

16  under familiar agency principles."  Docket No. 65 ("Ps' Suppl. Br.").  Plaintiffs contend that

17  Handsome Heidi acted as with "apparent authority" as an agent of CCI, or the CCI "ratified"

18  Handsome Heidi's consent to installation of the murals.  *Id.* at 13-15.

19       Plaintiffs cite persuasive authority for the proposition that common law agency and

20  ratification principles are recognized under VARA and/or the Copyright Act.  *See, e.g., Carter v.*

21  *Helmsley-Spear, Inc.,* 852 F. Supp. 228, 237 (S.D.N.Y. 1994) *rev'd in part and aff'd in part on*

22  *other grounds*, *Carter*, 71 F.3d 77 (2d Cir. 1995) ("Finally, an owner or his *agent* may, at the time

23  such a work is installed, seek from the artist or artists written consent to waive their VARA

24  rights.") (emphasis added); *Gilliam v. Am. Broad. Companies, Inc.*, 538 F.2d 14, 21 (2d Cir. 1976)

25  ("Although the case of *Ilyin v. Avon Publications, Inc*., 144 F.Supp. 368, 373 (S.D.N.Y.1956),

26  may be broadly read for the proposition *that a holder of a derivative copyright may obtain rights*

27  *in the underlying work through ratification*, the conduct necessary to that conclusion has yet to be

28  demonstrated in this case.") (emphasis added).

United States District Court
Northern District of California

However, even assuming agency and ratification principles apply, Plaintiffs have not plausibly alleged that Handsome Heidi acted as an "apparent agent" of Defendant CCI, or that CCI "ratified" Handsome Heidi's consent.  To plead CCI's liability on the basis of Handsome Heidi's "apparent agency," Plaintiffs would need to allege that Handsome Heidi manifested its role as agent of CCI, CCI engaged in conduct endowing Handsome Heidi with apparent authority, and that Plaintiffs reasonably relied on those manifestations before deciding to install the murals. *Restatement (Third) of Agency* § 2.03 (2006).  *See also id.* at § 2.03 cmt. c. ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal.").  The complaint, however, is devoid of any allegations as to Handsome Heidi's manifestation of its role as an agent of CCI and CCI's role therein.

Likewise, Plaintiffs have not plead facts sufficient to demonstrate CCI's ratification of Handsome Heidi's consent.  "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."  Restatement (Third) Of Agency § 4.01 (2006).  A person ratifies an act by manifesting assent that the act shall affect the person's legal relations, or by conduct that justifies a reasonable assumption that the person so consents.  *See Id.*  In the Ninth Circuit, agency through ratification presupposes an existing agency relationship.  *See Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2008) ("a principal agent relationship is ... a requisite [to ratification], and ratification can have no meaning without it.").  The absence of allegations to establish the presupposition of an agency relationship between CCI and Handsome Heidi, Plaintiffs cannot establish their ratification theory.  Nor is there any allegation as to CCI's conduct in ratifying Handsome Heidi's authority of the works.

Thus, the Court finds that Plaintiffs have failed to plausibly plead consent as required to state a claim under VARA for nonremovable works affixed to buildings.  *See* 17 U.S.C. § 113(d)(1).

### 3.   Removability

The question remains whether a consent requirement is implied in § 113(d)(2) regarding VARA's protection of removable works of art.  The Court concludes it does not.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

United States District Court
Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Section § 113(d)(2) regarding removable works of art does not trigger the same concerns as § 113(d)(1) regarding nonremovable works.  Section 113(d)(2)(A) and (B) requires only that a building owner make "a diligent, good faith attempt" to notify the artist of the impending removal of the removable work, or to provide 90 days of written notice to the artist before removing it.  *Id.*  While these notice requirements do burden building owners, the burden is minimal in comparison to the absolute bar on altering nonremovable artworks.  And Section 113(d)(2) makes no reference to a need for a pre-existing agreement between the artist and the building owner, an agreement which presume knowledge by the building owner.  Because building owners have reasonable recourse to address removable works on their property, no pre-existing agreement nor prior building owner knowledge and consent is required.

Thus, with regards to works affixed to buildings, Plaintiffs may state a claim under VARA *either* by alleging (1) that the work is nonremovable but was installed with permission of the building owner pursuant to § 113(d)(1), *or* (2) that that work is removable pursuant to § 113(d)(2).

Here, Plaintiffs argue that they have alleged enough to support an inference of removability based on the following allegation: "The owners of the Stud requested info from Defendants about their plans for the building, specifically noting that if the building was to be demolished that community members were interested in the facade being saved, preserved and moved; or that pieces of the building could be distributed."  Compl. ¶ 18.  Although the allegation suggests that portions of the murals could be "saved, preserved or moved," the allegation is set within the context of Defendant's contemplated "demoli[tion]" of the building.  Accordingly, it is not clear from the allegation whether or which (if any) murals are removable, as opposed to whether the preservation of the murals could only be achieved if they were salvaged from the building in the course of the demolition.  Plaintiff further argues that the photographs of the murals, Compl. ¶ 15, demonstrate "that most of the pieces are on wood," Ps' Supl. Br. at 7.  But that some of the works appear to be on wood does not necessarily mean that they are "removable."

Thus, as plead, the complaint does not adequately allege that Plaintiffs' artworks are removable and entitled to protection under § 113(d)(2).

4.     Willfulness

CCI further argues that Plaintiffs fail to state a claim under the VARA because they do not plausibly allege facts that CCI willfully or intentionally destroyed their artworks.  Mot. at 17-18; *Scott*, 309 F.Supp.2d at 400 (a VARA claim requires plaintiff to prove (1) the mural is a "work of recognized stature" and (2) the defendant destroyed the mural in an intentional or grossly negligent manner).  CCI, however, acknowledges the very sections in which Plaintiffs clearly and unambiguously state the factual bases for their allegations that CCI intentionally destroyed their murals.  *Id*.

For example, Plaintiffs alleged that after announcing the closing of the Stud, the operators of the Stud, Handsome Heidi, requested information from Defendant CCI about its plans for the building, "specifically noting that if the building was to be demolished that community members were interested in the façade being saved, preserved and moved; or that pieces of the building could be distributed."  Compl. ¶ 18.  Then, on June 20, 2020, in the middle of the Pride celebration, Plaintiffs alleged that CCI began to paint the building white, and then beige.  *Id*. ¶ 20.  Plaintiffs further allege that the "moment [CCI] began whitewashing and erasing the Artists' Murals, people on the street asked them to stop, but they refused."  *Id*.  Plaintiffs clearly allege that CCI completed its destruction of the murals by "mid-week of Pride 2020," and that CCI's decision, without warning or notice, to willfully destroy the murals during a historic event for San Francisco's LGBTQ community "demonstrated clear disdain for and degradation of [Plaintiffs]" and caused sadness, harm and outrage to Plaintiffs and the community.  *Id*. ¶¶ 22-23.

Despite acknowledging these allegations, CCI contends that they are not enough to allege willfulness because Plaintiffs had not established that they possessed any property "rights in the murals" or that "Plaintiffs had an interest in preserving and/or removing the murals."  Mot. at 18.  CCI provides no explanation for why Plaintiffs are required to establish a property right in the murals in order to allege willfulness.  CCI does not develop this argument, cite to any law, or authority supporting its assertion.  Moreover, the Court is not aware of any cases interpreting VARA to require a plaintiff to allege that the defendant had the specific intent to violate the plaintiff's VARA rights.  Nor does Defendant cite any such cases.  By contrast, cases describing

16

the elements of VARA state that VARA requires an allegation that a defendant *intentionally destroyed the artwork* – as Plaintiffs have alleged here. *See Whalen v. United Food & Com. Workers Loc. 135*, No. 14-CV-3017 W BLM, 2015 WL 4659213, at *3 (S.D. Cal. Aug. 5, 2015) ("[T]here appear to be two formulations for stating a VARA cause of action.  In *Martin v. City of Indianapolis*, 982 F.Supp. 625, 637 (S.D. Ind. 1997), the district court instructed that to state a VARA claim, the plaintiff must allege (1) he or she was the authors (2) of a work of visual art (3) within the scope of VARA (4) that was of recognized stature, and (5) **which was intentionally destroyed**.  In *Scott v. Dixon*, 309 F.Supp.2d 395, 400 (E.D.N.Y. 2004), the district court stated that a VARA claim required plaintiff to prove (1) the mural is a 'work of recognized stature' and (2) **the defendant destroyed the mural in an intentional or grossly negligent manner.**") (emphasis added).  Thus, Plaintiffs have sufficiently alleged CCI acted intentionally.

> 5.    <u>Leave to Amend</u>

For the reasons stated above, the Court concludes that Plaintiffs have failed to state a claim under VARA because they have not plausibly alleged either that they had the consent of the building owner, Defendant CCI, to install their nonremovable artworks to CCI's building, or that the artworks were removable.[1]  Thus, Plaintiffs' VARA claim is dismissed pursuant to Fed. R. Civ. 12(b)(6).

However, Plaintiffs are granted leave to amend.  Plaintiffs contend that they can satisfy the consent pleading requirement based on information gleaned through discovery.  Additionally, Plaintiffs allege that discovery has helped to clarify which murals were removable.  *See* Ps' Suppl. Br. at 16-19.  Thus, the Court declines to find that leave to amend would be futile.  Moreover,

---

[1] CCI asserts a new argument in the conclusion of its VARA briefing, for which it provides no support or development: "Lastly, Plaintiffs have not plead facts regarding how each of the Plaintiffs' honor or reputation has been injured."  Mot. at 18.  But this is not an element of a claim required at the pleading stage, nor does CCI provide any argument that it is.  *Lew v. City of Los Angeles*, No. 20CV10948DDPPLAX, 2021 WL 3912272, at *6 (C.D. Cal. Aug. 31, 2021) ("The VARA does not require a showing that the destruction of a work of visual art be prejudicial to an artists' honor or reputation.  Rather, the VARA provides that '*any* intentional distortion, mutilation, or modification of [a work of visual art] is a violation of that right'—the right to prevent the destruction of a work of visual art that would be prejudicial to the artists' reputation or honor. 17 U.S.C. § 106A (emphasis added).  In other words, by statute, the intentional destruction of a work of visual art is by definition prejudicial to the artists' honor or reputation."); c*f. Martin*, 982 F.Supp. at 637; *Scott*, 309 F.Supp.2d at 400.

1  Plaintiffs have not previously amended their complaint.  Thus, Plaintiffs are granted leave to

2  amend.

3  **B.**    State Law Claims

4          CCI argues that Plaintiffs' state law claims under the California Arts Preservation Act

5  ("CAPA") and for negligence must be dismissed because they are preempted by the VARA (or,

6  alternatively, because Plaintiffs fail to state clams).

7          **1.**    VARA's Preemption Clause

8          The VARA contains preemption provisions, providing:

> (1) [A]ll legal or equitable rights that are equivalent to any of the
> rights conferred by section 106A with respect to works of visual art
> to which the rights conferred by section 106A apply are governed
> exclusively by section 106A and section 113(d) and the provisions
> of this title relating to such sections.  Thereafter, no person is
> entitled to any such right or equivalent right in any work of visual
> art under the common law or statutes of any State.
>
> (2) Nothing in paragraph (1) annuls or limits any rights or remedies
> under the common law or statutes of any State with respect to–
>
> > (A) any cause of action from undertakings commenced before
> > the effective date set forth in section 610(a) of the Visual Artists
> > Rights Act of 1990;
> >
> > (B) activities violating legal or equitable rights that are not
> > equivalent to any of the rights conferred by section 106A with
> > respect to works of visual art; or
> >
> > (C) activities violating legal or equitable rights which extend
> > beyond the life of the author.

20  17 U.S.C. § 301(f).  Courts have acknowledged that "[f]rom the text and structure of the

21  statute, Congress clearly intended pre-emption analysis under VARA to track that of copyright in

22  general."  *See Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, No. 01 CIV.1226

23  DAB, 2003 WL 21403333, at *12 (S.D.N.Y. June 17, 2003) (citing H.R.Rep. No. 101–514 at 21

24  (1990) ("Section 5 [the preemption clause] of the bill follows the principles set forth in ... the

25  preemption section of the Copyright Act"); Nimmer on Copyright § 8D.06[F][2] at 8D–93–94

26  ("Construction of this [preemption] provision should presumably follow the general jurisprudence

27  of copyright preemption")).  "Indeed, not only did Congress place VARA's pre-emption clause

28  within the copyright title's own pre-emption provision, but it also utilized nearly identical

United States District Court
Northern District of California

1  language to describe the scope of VARA's pre-emptive reach." *Id.*[2] "Thus, copyright preemption

2  analysis is determinative of the scope of VARA's preemption clause." *Id.*; *see also Lew v. City of*

3  *Los Angeles*, No. 20CV10948DDPPLAX, 2021 WL 3912272, at *6 (C.D. Cal. Aug. 31, 2021)

4  (applying preemption analysis under the Copyright Act to VARA's preemption clause); *Whalen v.*

5  *United Food & Com. Workers Loc. 135*, No. 14CV3017-WQH-BLM, 2016 WL 2866875, at *2

6  (S.D. Cal. May 17, 2016) (same).

7        The Ninth Circuit uses a two-part test to determine whether a state-law claim is preempted

8  by federal copyrights laws. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

9  The first part determines whether the work in question falls within the scope of the Copyright

10  Act–that is, whether it is an "original" work "of authorship fixed in any tangible medium of

11  expression." *Id.*; *see* 17 U.S.C § 102.  The second part tests "whether the rights asserted under

12  state law are equivalent to the rights contained" in the federal copyright law. *Laws*, 448 F.3d at

13  1138.

14        2.   <u>CAPA Claim</u>

15        Plaintiffs do not dispute that the first part of the Ninth Circuit's preemption test for federal

16  copyright laws is satisfied here.  The parties focus on the second prong: whether the rights

17  Plaintiff asserts under CAPA are equivalent to the rights contained in and protected by the VARA.

18  With respect to the VARA, the Act confers "moral rights" of artists—the rights of "integrity" and

19  "attribution." *Cort*, 311 F.3d at 985-86. The right of integrity allows the artist "to prevent any

20  intentional distortion, mutilation, or other modification of that work which would be prejudicial to

21  his or her honor or reputation...." 17 U.S.C. § 106A.  Likewise, CAPA also protects the right of

22  integrity as well as the artist's reputation. *See* Cal. Civ. Code § 987(a) ("The Legislature hereby

23  finds and declares that the physical alteration or destruction of fine art, which is an expression of

24  the artist's personality, is detrimental to the artist's reputation, and artists therefore have an interest

25

26  _____

27  [2] *Compare* 17 U.S.C. § 301(a) (Copyright Act) ("Thereafter, no person is entitled to any such right [within the general scope of copyright] or equivalent right in any such work under the common law or statutes of any State.") with 17 U.S.C. § 301(f) (VARA) ("Thereafter, no person is entitled

28  to any such right or equivalent right in any work of visual art under the common law or any statutes of any State.").

United States District Court
Northern District of California

1    in protecting their works of fine art against any alteration or destruction; and that there is also a

2    public interest in preserving the integrity of cultural and artistic creations.").

3        Here, Plaintiffs expressly assert that their claim under CAPA seeks to vindicate their

4    "rights of integrity in their work, as set forth in Cal. Civ. Code § 987." Compl. ¶ 33.  The right of

5    integrity Plaintiffs assert under CAPA appears to be equivalent, if not identical, as the right of

6    integrity contained in the VARA.  Plaintiffs argue generally that "CAPA protects different

7    economic interests than VARA" and "affords different remedies and protects a different thicket of

8    rights than VARA." Opp. at 18.  The Court need not address these general propositions or decide

9    whether VARA *always* preempts a claim under CAPA.[3]  That is because Plaintiffs fail to explain

10   how the right they assert under CAPA *here*—their right to integrity (and the protection of their

11   works)—differs in any way from the right to integrity protected by the VARA.  *See* 17 U.S.C. §

12   301(f)(1) (VARA's express preemption clause provides that "no person is entitled to any such

13   right or equivalent right in any work of visual art under the common law or statutes of any

14   State.").  The allegations here are like those in in *Whalen v. United Food & Com. Workers Loc.*

15   *135*, where the court found plaintiffs' CAPA claim preempted by VARA where the plaintiffs

16   alleged only that their rights to integrity were violated without distinguishing that right from the

17   one protected by VARA.  2016 WL 2866875, at *3 (S.D. Cal. May 17, 2016).

18       Thus, "[b]ecause the right of integrity asserted in Plaintiffs' CAPA claim falls within the

19   scope of VARA, the CAPA cause of action is preempted." *Id.*; *see also Lew v. City of Los*

20   *Angeles*, No. 220CV10948DDPPLA, 2022 WL 60592, at *6 (C.D. Cal. Jan. 6, 2022) ("Plaintiff

21   alleges that Defendants have violated 'his right of integrity.' Because Plaintiff's rights asserted

22   under his CAPA claims fall squarely within the scope of VARA, the second prong is satisfied.").

---

[3] *See e.g., Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1072 (9th Cir. 2018) ("In enacting VARA in 1990, the House of Representatives indicated that: 'State artists' rights laws that grant rights not equivalent to those accorded under the proposed law are not preempted, even when they relate to works covered by H.R. 2690. For example, the law will not preempt a cause of action for a misattribution of a reproduction of a work of visual art or for a violation of a right to a resale royalty.'" (citing H.R. Rep. No. 101-514, 1990 U.S.C.C.A.N. 6915, 6931 (1990)); *cf. Lubner v. City of Los Angeles*, 45 Cal. App. 4th 525, 531 (1996) ("[I]t appears that section 987 has been preempted by the Visual Artists Rights Act of 1990. . . though it is not certain whether the California statute and the federal legislation are equal in scope").

1    Thus, Plaintiffs' CAPA claim, as plead, is preempted by the VARA.

2            3.      Negligence Claim

3            Similarly, CCI argues that Plaintiffs' negligence claim is preempted by the VARA.  Mot.

4    at 20.  Plaintiffs' negligence claim is based on the following allegations:

> Defendants, as custodians of the Murals, owed a duty of care to
> Plaintiffs to preserve the Murals and provide Plaintiffs the
> opportunity to remove the Murals from Defendants' property; at
> which point Plaintiffs would have been able to take title to their
> Murals free and clear of any adverse claims. . . Defendants
> destructive acts were the proximate cause Plaintiffs' injuries—the
> amount of which is to be proven at trial.

9    Compl. ¶¶ 37, 39.  Plaintiffs' negligence claim seems to reframe the rights provided for by the

10   VARA to preserve or be notified of the removal of their murals, *see* 17 U.S.C. § 106A(a), as a

11   "duty of care" under state negligence law.  Additionally, the injuries which Plaintiffs allege in the

12   complaint, and to which they presumably refer in their negligence claim, are injuries to "Plaintiffs

13   in their occupation. . . concerning the status of Plaintiffs as artist, and the status of their work," as

14   well as "prejudice to Plaintiffs' honor and reputation."  Compl. ¶¶ 23, 29.  The interests protected

15   by the "duty of care" alleged by Plaintiffs are no different than the "right of integrity" protected by

16   the VARA.  Indeed, Plaintiffs do not cite any common law duty of care that implies CCI's duty to

17   "preserve the Murals and provide Plaintiffs the opportunity to remove the Murals from [CCI's]

18   property."  Instead, any such duty appears to arise directly from the rights protected by the VARA

19   (and CAPA).  Likewise, the injuries Plaintiffs allege are identical to the injuries Plaintiffs seek to

20   remedy through their VARA claim.

21           Again, Plaintiffs argue only generally that their "state law negligence claim affords

22   different rights—protecting as it does economic rights; Plaintiffs suggest that Paragraph 37 of the

23   Complaint asserts the Artists' title in the physical art works which results in different damages for

24   the harm to the Artists' reputation protected by VARA."  Opp. at 19.  But Plaintiffs' complaint

25   does not actually assert their ownership or title rights to the murals.  Paragraph 37 of the complaint

26   alleges that *if* CCI had preserved the murals or provided Plaintiffs with the opportunities to

27   remove the murals, *then* "Plaintiffs would have been able to take title to their Murals free and clear

28   of any adverse claims."  Compl. ¶ 37.  It does not allege a preexisting ownership right in the

United States District Court
Northern District of California

murals.  Instead, their rights are based on VARA (and CAPA), not title ownership.

Plaintiffs are correct that *if* they were to have alleged an ownership right in the murals, *then* their negligence claim would not necessarily be preempted by the VARA.  That is precisely what occurred in *Whalen*.  There, the "[p]laintiffs allege[d] that they 'did not relinquish their ownership or title rights to 'Providing the Feast Mural'" and further alleged that the defendant 'intentionally deprived' the plaintiffs "of their ownership or title rights by 'desecrating 'Providing the Feast Mural.'"  *Whalen v. United Food & Com. Workers Loc. 135*, No. 14CV3017-WQH-BLM, 2016 WL 2866875, at *3 (S.D. Cal. May 17, 2016).  The court reasoned that "[a]s alleged, Plaintiffs' property rights are distinct from the moral rights that VARA protects," and, thus, "VARA does not preempt Plaintiffs' common law conversion and negligence claims which seek damages for the intentional deprivation of Plaintiffs' 'ownership or title rights' to the mural."  *Id.*

However, Plaintiffs here have not alleged similar facts to support a negligence theory to vindicate property rights in the murals.  Instead, as plead, Plaintiffs' negligence claim seeks redress for violations of the same moral right of integrity protected by the VARA.  Plaintiffs' negligence claim, then, is preempted by the VARA.

C.    Leave to Amend

For the reasons explained above, Plaintiffs' state law CAPA and negligence claims are preempted by the VARA.  However, VARA may not *always* preempts claims under CAPA and for negligence.  Plaintiffs are in the midst of ongoing discovery (scheduled to close on June 13, 2022, *see* Docket No. 54), which may reveal facts that support viable claims.  Plaintiffs have not previously amended their complaint.  In light of Fed. R. Civ. P. 15(a)(2) liberal policy favoring leave to amend "when justice so requires," Plaintiffs are granted leave to amend their state law claims.

## IV.    CONCLUSION

The Court **GRANTS** CCI's motion to dismiss or for judgment on the pleadings as to Plaintiffs' VARA claim because Plaintiffs have failed to state a claim.  The Court also **GRANTS** CCI's motion for judgment on the pleadings as to Plaintiffs' state law claims under CAPA and for negligence because those claims, as plead, are preempted.  However, the Court grants Plaintiffs'

leave to amend their VARA and state law claims.

Plaintiffs' amended complaint is due within thirty (30) days of entry of this order.

This order disposes of Docket No. 51.

**IT IS SO ORDERED**.

Dated: July 11, 2022

_____
EDWARD M. CHEN
United States District Judge