UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA CANILAO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY COMMERCIAL INVESTMENTS, LLC,<br><br>    Defendant. | Case No. 20-cv-08030-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 82 |

Plaintiffs Monica Canilao, Zarathustra Wesolowski, Ellery Bakaitis, Jeremy Novy, Susan Greene, and Hailey Gaiser (collectively, "Plaintiffs") filed suit against Defendant City Commercial Investments, LLC ("CCI"). Docket No. 81 ("FAC"). Now pending before the Court is CCI's motion to dismiss. Docket No. 82 ("MTD").

For the following reasons, the Court **GRANTS in PART and DENIES in PART** CCI's Motion to Dismiss as to the VARA claim and **GRANTS** CCI's Motion to Dismiss as to the negligence claim.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

A.    Factual Background

CCI owns the building at 399 9th Street, San Francisco, CA, located in the South of Market neighborhood. FAC ¶¶ 1, 12. CCI acquired the building in 2015. FAC ¶ 14. The building was leased for use as a bar by third-party defendant Handsome Heidi, LLC ("HH"), which operated the bar under the moniker "The Stud" since 1966. FAC ¶ 12; MTD at 1. The Stud describes itself as the oldest operating "queer venue and nightlife hub" in the SOMA district that

"provid[es] a safe, welcoming venue for creative expression, celebration and nightlife." FAC ¶ 12.

Plaintiffs are six artists whose murals were installed on the exterior of The Stud. FAC ¶ 13. When CCI acquired the building in 2015, Plaintiff Jeremy Novy's mural entitled "Stud Stencil, No. 1" had already been painted on one of the exterior doors, and Plaintiff Susan Greene's mural "Head First" was added shortly thereafter. FAC ¶¶ 13–14. In 2017, Monica Canilao's "Stepping Out," Zarathustra Wesolowski's "Queer Trans Spaces," Ellery Bakaitis' "Hand, Face, Lips and Teeth," and Hailey Gaiser's "Eyes Wide Open" were added. FAC ¶ 13; MTD at 3. The Stud invited artists to contribute to the building's walls, curated artistic themes, and decided to install the murals. FAC ¶ 15. After all six murals had been installed, CCI communicated with the City of San Francisco, exchanging photos of the murals to argue that the murals constituted art on the building to avoid graffiti citations. FAC ¶ 15.

During the COVID-19 pandemic, financial pressures forced The Stud to shut down. FAC ¶ 18. The Stud's cooperative owners requested that CCI notify them prior to demolishing the building in order to preserve the murals. FAC ¶ 19. Plaintiffs explain that art preservation and engineering techniques have made it possible to remove artwork from cement, wood, and doors. FAC ¶¶ 20–21. On June 20, 2020, CCI began painting the building exterior white, erasing the murals. FAC ¶ 23. Plaintiffs assert that CCI's destruction of the murals conveyed a false statement that the work of Plaintiffs did not rise to the level of being worthy of preservation, violated Plaintiffs' moral rights in their works, and caused economic and property loss. FAC ¶¶ 27–29.

B. Procedural History

Plaintiffs filed their original complaint on November 13, 2020. Docket No. 1. Plaintiffs asserted (1) infringement of rights under the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A, (2) intentional destruction of fine art under the California Art Preservation Act ("CAPA"), Cal. Code § 987, and (3) negligence. Docket No. 1. CCI filed an answer and a third-party complaint against HH. CCI filed a motion to dismiss the complaint and for judgment on the pleadings. Docket No. 51. This Court granted the motion for judgment on the pleadings but

1   allowed Plaintiffs to amend their complaint.  Docket No. 67 ("JOP Order"); *Canilao v. City Com.*

2   *Invs.*, LLC, 2022 WL 2668550 (N.D. Cal. July 11, 2022).

3         Plaintiffs filed their First Amended Complaint on August 10, 2022.  Docket No. 81

4   ("FAC").  CCI now brings a motion to dismiss under Rule 12(b)(6).  Docket No. 82 ("MTD").

## II.     LEGAL STANDARD

A.     Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

      Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed.  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.     DISCUSSION

      In its motion to dismiss, CCI argues that the First Amended Complaint fails to assert a VARA claim because the pleadings neither plausibly allege that the murals were "removable" under § 113(d)(2) nor plausibly allege that CCI consented to the non-removable mural installation

*United States District Court*
*Northern District of California*

through HH acting as its agent under § 113(d)(1). MTD at 5–8. Additionally, CCI argues that Plaintiffs' negligence claim fails because Plaintiffs held no property ownership rights in the murals under California fixture law. *Id.* at 9. The Court addresses each issue in turn.

A.    <u>Plaintiffs' VARA Claim</u>

VARA contains specific provisions to protect visual artists' rights for artwork incorporated into a building. In full, § 113(d) states:

> (1) In a case in which—
>
> > (A) a work of visual art has been incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), and
> >
> > (B) the author consented to the installation of the work in the building either before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, or in a written instrument executed on or after such effective date that is signed by the owner of the building and the author and that specifies that installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal,
>
> then the rights conferred by paragraphs (2) and (3) of section 106A(a) shall not apply.
>
> (2) If the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), the author's rights under paragraphs (2) and (3) of section 106A(a) shall apply unless—
>
> > (A) the owner has made a diligent, good faith attempt without success to notify the author of the owner's intended action affecting the work of visual art, or
> >
> > (B) the owner did provide such notice in writing and the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal.
>
> For purposes of subparagraph (A), an owner shall be presumed to have made a diligent, good faith attempt to send notice if the owner sent such notice by registered mail to the author at the most recent address of the author that was recorded with the Register of Copyrights pursuant to paragraph (3). If the work is removed at the expense of the author, title to that copy of the work shall be deemed to be in the author.

4

> (3) The Register of Copyrights shall establish a system of records whereby any author of a work of visual art that has been incorporated in or made part of a building, may record his or her identity and address with the Copyright Office. The Register shall also establish procedures under which any such author may update the information so recorded, and procedures under which owners of buildings may record with the Copyright Office evidence of their efforts to comply with this subsection.

17 U.S.C. § 113(d).[1]

This Court has previously construed § 113(d) of VARA to offer protection for artworks in two different circumstances:

> To summarize, if the artwork is incorporated "**in such a way that removing the work from the building will cause the destruction**, distortion, mutilation, or other modification of the work," then the artist's rights may be waived if the artist "consented to the installation of the work in the building . . . in a written instrument." *Id.* § 113(d)(1) (emphasis added).
>
> Alternatively, "**[i]f the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction**, distortion, mutilation, or other modification of the work," then the artist's rights prevail unless one of two things has occurred. *Id.* § 113(d)(2) (emphasis added). First, the building's owner "has made a diligent, good faith attempt without success to notify the author of the owner's intended action affecting the work of visual art." *Id.* Or second, the owner has "provide[d] such notice in writing and the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal." *Id.*

JOP Order, at *8. In other words, for artwork that is non-removable, VARA protections apply

---

[1] Section 106A(a)(2)–(3) states that the author of a work of visual art:

> (2) shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and
>
> (3) subject to the limitations set forth in section 113(d), shall have the right—
>
> > (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
> >
> > (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

17 U.S.C. § 106A(a).

5

under § 113(d)(1) if the building owner knew and consented to the installation of the works. *Id.* at 11. This Court has read VARA to require that an artist "obtain[] permission from the building owner in order for VARA's protections to attach to their installation of a non-removable artwork on a building" in order to prevent "creat[ing] an incentive for an artist to secretly install unsanctioned, non-removable artwork without the permission of a building owner." *Id.* at *9, 11. For artwork that is removable, VARA protections apply under § 113(d)(2) regardless of whether the building owner consented. *Id.* at 14. This Court has explained that "§ 113(d)(2) regarding removable works of art does not trigger the same concerns as § 113(d)(1) regarding nonremovable works . . . Because building owners have reasonable recourse to address removable works on their property, no pre-existing agreement nor prior building owner knowledge and consent is required." *Id.* at 15.

In response to the Court's observation that the complaint failed to allege the building owner's consent to installation of the murals, Plaintiffs allege in their amended complaint that such consent was in fact obtained via HH acting as CCI's agent. FAC ¶¶ 14–16. For the reasons stated below, the First Amended Complaint fails to adequately allege such agency, and therefore their claim—predicated on CCI's consent—fails under § 113(d)(1). But the Court also finds that Plaintiffs plausibly allege that the artwork is removable and thus survives the motion to dismiss, regardless of consent, under § 113(d)(2).

1. <u>Building Owner's Consent</u>

As noted above, this Court has previously explained that "to state a VARA claim, an artist must allege they obtained the consent of a building owner to install the artwork in the first place." JOP Order, at *9. Although "the statutory provisions of the VARA do not expressly state that the consent of the building owner is necessary . . . common sense implies a requirement that a plaintiff must plead consent of a building owner to establish standing and access the protections of the VARA . . . at least with regards to works of art that cannot be removed from a building without causing their destruction." *Id.* (cleaned up).

In their amended complaint, Plaintiffs add two paragraphs directed towards an alleged agency relationship. One paragraph is merely a conclusory statement and does not plausibly

6

establish an agency between CCI and HH:

> 14. Upon information and belief, at the time that each of the Murals were installed, the respective Artists were *authorized by Defendant and/or The Stud's owners and operators who were vested with agency to beautify and upkeep the premise of the property as agents of the Defendant*. First, Defendant knew from the time that it acquired the building in 2015 that The Stud was a community hub for creative visual arts and movements. Jeremy Novy's "Stud Stencil no. 1" was already installed on the building when Defendant acquired the building. Defendant also owned properties adjacent to The Stud and was well aware of the Murals created and installed on the property.

FAC ¶ 14 (emphasis added). No specific facts satisfying *Twombly* and *Iqbal* are provided. *See Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662.

The other paragraph, on the other hand, does allege specific facts about the relationship between CCI and HH:

> 15. Upon information and belief, The Stud's owners had the right to paint the walls while occupying the premise under their lease and invited mural artists like Plaintiffs to contribute to the building's walls with select themes. The Stud's artistic curation and decisions to install the Murals were *ratified, approved, and encouraged by Defendant* throughout the years. Defendant was constantly involved in communication with the City of San Francisco and The Stud's operators and agents in defending the Murals to avoid graffiti citations. Based on this relationship and common understanding between The Stud and Defendant, The Stud invited Artists to create the Murals and represented to the City that those Murals were approved by the business. As such, The Stud cemented its role as the curator, steward, and director of the creative productions of artworks and murals on its property. For example, over the years after the Murals were installed, representatives of CCI actively communicated about the Murals with the San Francisco Department of Public Works. There, CCI representatives and the Department exchanged photos of the Murals and CCI explained that the Murals were "art on the building" distinguishable from graffiti. As a result, CCI avoided citations for graffiti and blight.

FAC ¶ 15 (emphases added).

Based on these allegations, Plaintiffs advance two theories of agency: that HH's actions were retroactively ratified by CCI, or that HH acted with apparent authority. Neither theory is persuasive.

As a preliminary matter, this Court looks to federal common law principles of agency to determine whether HH acted as CCI's agent in consenting to the installation of the murals under

7

VARA. As this Court has previously found, federal common law agency and ratification principles are recognized and incorporated under VARA. *See* JOP Order, at *13 (citing *Carter v. Helmsley-Spear, Inc.*, 852 F. Supp. 228, 237 (S.D.N.Y. 1994) *rev'd in part and aff'd in part on other grounds*, 71 F.3d 77 (2d Cir. 1995) ("Finally, an owner or his *agent* may, at the time such a work is installed, seek from the artist or artists written consent to waive their VARA rights.") (emphasis added)). That federal common law of agency, rather than state law, applies to VARA is underscored by the fact that VARA has a preemption clause. *See* 17 U.S.C. § 301(f). The Court now turns to Plaintiff's substantive arguments of agency under federal common law.

First, the First Amended Complaint does not plausibly plead ratification. To establish that CCI ratified HH's acts, Plaintiffs must show that CCI "affirm[ed] a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01 (2006); *see also J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *8 (N.D. Cal. Oct. 28, 2020) ("Ninth Circuit courts apply common law agency principles from the Restatement (Third) of Agency.") (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018)). In the Ninth Circuit, agency through ratification presupposes an existing agency relationship. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014) (citing *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2008), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 765 (9th Cir. 2017) ("[T]he principal agent relationship is still a requisite [to ratification], and ratification can have no meaning without it.")); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *6 (N.D. Cal. Jan. 4, 2018).[2] Plaintiffs previously

---

[2] Plaintiffs contend that California Civil Code § 2307 does not require there to be an existing agency relationship. Cal. Civ. Code § 2307 ("An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification."). However, as discussed above, the rights conferred under California state law are preempted by federal common law agency law. This Court follows federal common law to analyze agency under VARA.

But even disregarding the "presupposed agency relationship" requirement pursuant to § 2307, the ratification theory fails because Plaintiffs do not plausibly allege that CCI knew all the material facts of the installation of the murals. A principal must "know[] of the material facts involved in the act it is ratifying. This knowledge requirement is met if the principal either has 'actual knowledge' or 'choose[s] to affirm without knowing the material facts.'" *Henderson*, 918 F.3d at 1075; *see also* Cal. Civ. Code § 2314 ("A ratification can be made only in the manner that

8

failed to plead their ratification theory because they did not allege the presupposition of any agency relationship between CCI and HH that arose following the mural installations. JOP Order, at *14. This remains the case. An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019); *see also United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1141 (N.D. Cal. 2015) (holding that for an actual agency relationship, "(1) there must be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking").

Here, there was no predicate agency relationship between HH and CCI at the time HH invited the murals. Plaintiff does not allege that CCI and HH had an understanding that CCI was to control and manage the mural installation. Indeed, there is no allegation that CCI had advance knowledge of the installation of the murals. Further, Plaintiffs' allegations that CCI and HH communicated with the City of San Francisco to defend the murals only show that CCI attempted to avoid graffiti citations for the murals subsequent to their installation. There is no allegation that

---

would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof."); *In re Fletcher's Est.*, 36 Cal. App. 2d 567, 573 (1940) ("Ratification of the previously unauthorized acts of an agent requires that the principal have full knowledge of all of the facts, particularly of the acts of the person claiming to act as agent. The principal must also have full knowledge of his rights in the matter, which implies a knowledge of the legal effect of the acts, and to constitute a ratification the principal must be acquainted with what has actually been done, and he is not bound by an approval made under a misapprehension of the real nature of the facts. Unless all the circumstances are made known to him, the ratification is void."). The amended complaint fails to plead facts establishing CCI's knowledge. Plaintiffs only allege that CCI communicated with the City of San Francisco as to whether the murals were subject to graffiti fines. But knowledge of the mere existence of the murals is not enough. The pleadings must allege that CCI knew about the expectation or promise of the permanence of the murals. Here, there are no facts pled that CCI knew of or was willfully blind as to the arrangement between the artists and The Stud, the method of mural installation, or how permanent the artists expected the murals to be. That CCI "knew . . . that The Stud was a community hub for creative visual arts and movements" and "owned properties adjacent to The Stud and was well aware of the Murals created and installed on the property" does not necessarily mean that CCI knew the material facts regarding the installation of the six murals at issue here. FAC ¶ 14. Thus, Plaintiffs cannot establish their ratification theory.

CCI delegated agency authority to HH in connection with the handling of the graffiti citations; even if there was a basis to assume such a delegation, it was not a sufficient basis to find ratification of the decision to retrospectively permit the permanent installation of the murals. Thus, the First Amended Complaint does not adequately establish the presupposed agency relationship necessary for ratification.

Second, the First Amended Complaint fails to establish apparent authority. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997). To establish apparent agency, Plaintiffs must show "(1) that [HH] subjectively believed that agent [HH] had authority to act for principal [CCI], and (2) that the subjective belief in agent's [HH] authority was objectively reasonable." *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1073 n.2 (9th Cir. 2001). Plaintiffs assert that the terms of the lease granted HH apparent authority over the mural installation. FAC ¶ 15. It does not. The relevant portion of the lease reads as follows:

> 7.1(a)  In General. . . . Lessee shall, at Lessee's sole expense, keep the Premises . . . and Alterations in good order, condition, and repair (whether or not the portion of the Premises requiring repairs, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises), including, but not limited to, all equipment or facilities, such as plumbing, HVAC equipment, electrical, lighting facilities . . . walls (interior and exterior) . . . Lessee shall, during the term of this Lease, keep the exterior appearance of the Building in a first-class condition, including, e.g., graffiti removal, consistent with exterior appearance of other similar facilities of comparable age and size in the vicinity, including, when necessary, the exterior repainting of the Building.

The lease permits HH to make decisions about when it would be necessary to engage in "exterior repainting of the Building" and how to handle "graffiti removal." While "repainting" is not necessarily so narrow as to mean only "paint[ing] it in the manner it was painted before," as CCI suggests, MTD at 6, it does not encompass the installation of art on exterior walls without consent of the building owner. A building owner might well object to the installation of art because of its

10

1    content and/or its aesthetics.  Nothing in the lease can be reasonably construed to give HH carte

2    blanche to install artworks on the building without the owner's knowledge or consent.  And while

3    installing murals may be an effective way of deterring additional graffiti, it is not a method of

4    "graffiti removal."  Thus, the lease did not confer apparent authority upon HH to invite the murals

5    on the buildings.

6    The Court next considers Plaintiffs' argument that CCI's communications with the City of

7    San Francisco granted HH apparent authority over the mural installation.  Opp. at 6.  This, too,

8    fails.  CCI's representations before the department may have *prospectively* given HH a subjective

9    belief of authority to deal with the City with respect to the graffiti issue moving forward.  But, as

10   noted above, Plaintiffs concede that CCI's communications with the City and HH's involvement

11   therewith occurred *after* all six murals had been installed.  HH had no apparent authority to invite

12   their original installation.

13   Plaintiffs do not plausibly allege that HH acted with ratified authority or apparent authority

14   as CCI's agent in installing the murals.  Without CCI or CCI's agent's consent, Plaintiffs do not

15   have a claim under § 113(d)(1).

16   2.    Mural Removability

17   However, Plaintiffs' amended complaint adequately pleads that the murals are

18   "removable" and thus entitled to the protection of a 90-day notice period under § 113(d)(2),

19   protection which is not predicated on building owner consent to installation.  A work is removable

20   if it "is a part of such building and which can be removed from the building without the

21   destruction, distortion, mutilation, or other modification of the work."  § 113(d)(2).

22   Plaintiffs argue that the First Amended Complaint supports an inference of removability

23   because it "cit[es] to professional reports demonstrating the feasibility of mural removal based

24   upon advanced preservation and engineering techniques and based on the knowledge and

25   experience of Plaintiffs who assert they could have removed the Murals without damage to the

26   Murals or the premises, and with minimal cost and effort."  Opp. at 3.  Plaintiffs conclude that

27   because the murals are removable, they are entitled to § 113(d)(2) protections and were thus

28   "deprived . . . from any opportunity to negotiate such a plan for removal and to explore costs and

11

1    options when [CCI] completely ignored the 90-day notice provision." Opp. at 5.

2         Here, Plaintiffs bolster the insufficient pleadings that the Court pinpointed in the prior

3    order granting CCI's motion for judgment on pleadings. This Court had explained:

> Here, Plaintiffs argue that they have alleged enough to support an inference of removability based on the following allegation: "The owners of the Stud requested info from Defendants about their plans for the building, specifically noting that if the building was to be demolished that community members were interested in the facade being saved, preserved and moved; or that pieces of the building could be distributed." Compl. ¶ 18. Although the allegation suggests that portions of the murals could be "saved, preserved or moved," the allegation is set within the context of Defendant's contemplated "demoli[tion]" of the building. Accordingly, it is not clear from the allegation whether or which (if any) murals are removable, as opposed to whether the preservation of the murals could only be achieved if they were salvaged from the building in the course of the demolition. Plaintiff further argues that the photographs of the murals, Compl. ¶ 15, demonstrate "that most of the pieces are on wood," Ps' Supl. Br. at 7. But that some of the works appear to be on wood does not necessarily mean that they are "removable."

JOP Order, at *15. The amended complaint reads:

> 19. Upon information and belief, the Murals Artists and the community believed that that Murals can be removed, preserved, and salvaged and were motivated to remove and preserve the Murals. Prior to moving out and closing, The Stud's cooperative owners asked Defendant, the landlord of the property, about the plan for the building and specifically requested that they be notified ahead of time if the building was to be demolished so that the Murals on the façade could be preserved, salvaged, and removed.
>
> 20. Advancements in art preservation and engineering techniques have greatly enhanced the feasibility of removing art installed on surfaces of buildings and walls, even if the artwork is applied on cement, using various chiseling and cutting techniques for conservation. For example, Rufino Tamayo's 43 feet wide by 9 feet high mural which had been fused onto a wall was removed and conserved through advanced engineering technique. Similarly, valuable street art such as those created by Banksy have been cut, removed, and preserved.
>
> 21. Upon information and belief, all of the Murals were removable. For example, Jeremy Novy's 21. "Stud Stencil, no. 1" (2011) was installed on a door which could easily have been removed. Monica Canilao's "Stepping Out" (2017) was also easily removable, as it was installed on wood surface which can be replaced with a board. Most of the other pieces of Murals were also similarly installed on wood surface and thus easily removable for preservation.

FAC ¶¶ 19–21. These amended allegations of removability are sufficient to survive a motion to dismiss. *See Cohen v. G&M Realty L.P.*, 320 F. Supp. 3d 421, 444 (E.D.N.Y. 2018) (finding that expert testimony was persuasive "that many [aerosol works] could have been totally or partially removed by the artists, at little cost, because the works were on 'siding or plywood or sheetrock' or they 'incorporated doors or windows from the building [which] could have been easily removed'"). The Court was previously concerned with the preservation of the murals outside the context of demotion—here, the amended complaint doesn't limit the new allegations to "if the building was to be demolished" and provides an example of a mural that was removed without demolishing the building. The Court was also previously concerned with how murals painted on wood would be removable—here, the amended complaint explains that chiseling, cutting, and replacement techniques could preserve the murals and the building. Moreover, CCI's focus on the demolition of the building is misplaced. Section 113(d)(2) is not concerned with the preservation of the *building* in the removal process, but with the preservation of the *work*. *See* § 113(d)(2) (stating that a work is removable if it "can be removed from the building without the destruction, distortion, mutilation, or other modification *of the work*") (emphasis added). Removability of the art in question without their destruction, etc., is alleged in the First Amended Complaint.

Because the factual allegations in the amended complaint suggest that the murals were removable, Plaintiffs' VARA claim under § 113(d)(2) that CCI breached its obligation to provide a 90-day notice survives.

B. Plaintiffs' Negligence Claim

Plaintiffs also assert a negligence claim. According to Plaintiffs, CCI owed Plaintiffs a duty of care as the custodian of the murals to preserve and provide the opportunity to remove the murals, CCI breached this duty by destroying the murals without notice to Plaintiffs, and CCI's actions were the proximate cause of Plaintiffs' injury. FAC ¶¶ 50–53. In its motion to dismiss, CCI contests that the negligence claim fails because Plaintiffs had no property ownership rights over the murals affixed to the building. MTD at 9. This Court agrees with CCI.

This Court previously dismissed the negligence claim with leave to amend, explaining that Plaintiffs' negligence claim involving their "right of integrity" in the murals was preempted by

13

VARA. JOP Order, at *21. As previously discussed, *see supra* Discussion (A)(1), VARA contains preemption provisions expressly providing that Congress intended for VARA to preempt state law claims. *See* 17 U.S.C. § 301(f). This Court determined that Plaintiffs' state law negligence claim was preempted by VARA because "the interests protected by the 'duty of care' alleged by Plaintiffs are no different than the 'right of integrity' protected by the VARA." JOP Order, at *21. But the Court left open the possibility that Plaintiffs' negligence claim could proceed if they established "property rights . . . distinct from the moral rights that VARA protects. *Id.* at *22.

To establish a claim, not preempted, Plaintiffs would have to establish rights beyond the moral rights encompassed by VARA. It could do so by establishing property ownership rights. However, Plaintiffs' First Amended Complaint fails to establish Plaintiffs' property rights in the murals. Here, the murals had become so affixed to the building as to be considered legal fixtures under the ownership of CCI pursuant to California fixture law. California Civil Code § 660 provides:

> A thing is deemed to be *affixed* to land when it is *attached to it by roots*, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or *permanently resting upon it*, as in the case of buildings; or *permanently attached* to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sales of goods.

Cal. Civ. Code § 660 (emphases added). California Civil Code § 1013 provides that such fixtures belong to the owner of the building, not the affixers of the murals:

> When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as otherwise provided in this chapter, *belongs to the owner of the land*, unless he chooses to require the former to remove it or the former elects to exercise the right of removal provided for in Section 1013.5 of this chapter.

Cal. Civ. Code § 1013 (emphasis added). Here, the murals are "permanently attached to" the "permanent" walls of the building "by means of cement, plaster, nails, bolts, or screws." The

14

murals were installed on wood surfaces, which necessarily were attached to the walls of the building via "cement, plaster, nails, bolts, or screws." *See* FAC ¶ 21 ("Most of the other pieces of Murals were also similarly installed on wood surface . . ."). The parties are unclear as to the precise attachment mechanism: whether the murals are painted on wood surfaces that are then installed on the building, or whether the murals are directly painted onto the wood siding that originally constituted the walls of the building. If the latter, then the paintings are clearly affixed because the paint is "permanently resting upon" the building. If the former, the statute provides a comprehensive list of the ways that wood surfaces may be affixed to the building. Indeed, if the wood surfaces were not attached via a method listed (*e.g.*, screwed) and only leaning or "permanently resting upon" the wall, that would be sufficient for the murals to be "affixed" to the building under California law. The murals do not need to be directly attached to the wall themselves. *See, e.g.*, *Broadway Imp. & Inv. Co. v. Tumansky*, 2 Cal. 2d 465, 469 (1935) (holding that radiators connected by means of a "slip joint threaded union and flange" to a gas pipe were attached to the building in such a way as to become fixtures and a part of the realty). And the mural paint does not need to be imbedded in the wood.[3]

Although—as Plaintiffs assert—some artworks attached via these listed means may be removable through new conservation techniques, removability under VARA does not inform what is affixed under § 660. Because Plaintiffs have "affixed" their murals to property belonging to CCI, without any agreements permitting Plaintiffs to remove the murals, the murals "belong[] to the owner of the land" under § 1013, not to Plaintiffs. And without property ownership interests distinct from the rights to integrity protected by VARA, Plaintiffs cannot maintain a negligence claim.

Plaintiffs argue that whether the murals are "fixtures" is "a highly fact-specific inquiry that is not suitable for determination on a motion to dismiss." Opp. at 7. Plaintiffs are correct that

---

[3] The Court rejects Plaintiff's argument that the murals were not affixed to the wall because they were removable and mostly installed on wood. Opp. at 8. Plaintiffs argue that § 660 states that a thing is only deemed "affixed" to a wall if it is "imbedded" in it. Opp. at 8. But the statute has no such requirement. Rather, § 660 is clear that imbedding is only one way that a thing may be considered affixed—it may also be affixed if it is "permanently attached to" or "permanently resting upon" it. Cal. Civ. Code § 660.

California courts have determined that "[w]hether or not an article annexed to the real property is a fixture is a question of fact to be determined upon the evidence in the particular case." *Bell*, 52 Cal. App. 2d at 73; *see* Opp. at 8 (citing *Abrenilla v. China Ins. Co.*, 870 F.2d 548, 549 (9th Cir. 1989)). But here, the undisputed evidence establishes the murals' status as a fixture affixed to the building.

The Court thus dismisses Plaintiffs' negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** CCI's Motion to Dismiss as to Section 1 of the VARA claim and **DENIES** the motion as to Section 2 of the VARA claim. The Court **GRANTS** CCI's Motion to Dismiss as to the negligence claim.

This order disposes of Docket No. 82.

**IT IS SO ORDERED**.

Dated: October 18, 2022

_____
EDWARD M. CHEN
United States District Judge